# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA
### MOBILE DIVISION

In re:

**ROBERTA LEE JONES AKA ROBERTA JONES AKA**    **CASE NO: 15-02294**
**ROBERTA L. JONES AKA ROBERTA LEE SANDERS**    **CHAPTER: 13**
**Debtor(s)**

## MOTION FOR RELIEF FROM THE AUTOMATIC
## STAY AND CO-DEBTOR STAY OF SECTIONS 362 AND 1301 OR IN THE ALTERNATIVE ADEQUATE PROTECTION BY NATIONSTAR MORTGAGE LLC

    **COMES NOW** Nationstar Mortgage LLC Servicer for U.S. Bank National Association, not in its individual capacity but solely as Trustee NRZ PASS-THROUGH TRUST X ("Nationstar Mortgage LLC"), (hereinafter sometimes referred to as "Movant"), a secured creditor in this proceeding, by and through its attorneys of record and hereby moves this Honorable Court to enter an Order granting to Movant relief from Sections 362 and 1301 of the United States Bankruptcy Code so as to permit the foreclosure of the mortgage in favor of Movant upon the real property securing its claim and as grounds for said motion, Movant states as follows:

1. On July 20, 2015, the Debtor, Roberta Lee Jones aka Roberta Jones aka Roberta L. Jones aka Roberta Lee Sanders, filed a petition with the Bankruptcy Court for the Southern District of Alabama under Chapter 13 of Title 11 of the United States Code.

2. On the date the petition was filed, the Debtor and Larry E. Jones (Co-Debtor) was the owner of real property with an address of 9493 Bryants Landing Road, Stockton, AL 36579 ("Property") and more particularly described in the Mortgage referred to below.

3. The said Mortgage secures a Note in favor of Sebring Capital Corporation, in the original principal amount of $73,600.00, dated November 17, 2000 ("Note"), a copy of which is attached as "Exhibit 1."

4. The Property is subject to the first lien of the Movant by the Mortgage recorded in the BALDWIN County Public Registry, ("Mortgage"), a copy of which is attached as "Exhibit 2."

5. The said Note and Mortgage have been transferred and assigned to U.S. Bank National Association, not in its individual capacity but solely as Trustee NRZ PASS-THROUGH TRUST X.

6. Pursuant to the plan, the Debtor was to continue paying the current mortgage payments to Nationstar Mortgage LLC outside of the plan.

7. The Debtor has defaulted in the payment of the mortgage payments to be made outside of the plan. Upon information and belief, the amount of the default, exclusive of attorney fees and costs, is as follows:

| | |
|---|---|
| 4 payments at $1,113.58 | $4,454.32 |
| December 1, 2016 To March 1, 2017 | |
| 4 payments at $1,069.44 | $4,277.76 |
| April 1, 2017 To July 1, 2017 | |
| 8 payments at $1,017.03 | $8,136.24 |
| August 1, 2017 To March 1, 2018 | |
| Less Suspense | $109.87 |
| TOTAL PAYMENTS DUE | $16,758.45 |

8. Attached hereto is a post-petition payment ledger of all direct payments received from the Debtor.

9. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

10. The approximate payoff is $101,601.20.

11. The scheduled value of the subject property is $82,000.00. This information was obtained from Schedule D.

12. Upon information and belief, there is a lien on the subject property in favor of Citifinancial, in the amount of $78,467.00. Debtor has stated this on his/her Schedule D.

13. Because the debtor(s) have failed to keep the payments current, as required, the property is not necessary for an effective reorganization, and there is no equity in the property, Nationstar Mortgage LLC, is entitled to relief from the Automatic Stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

14. This motion shall serve as notice to the Debtor and Co-Debtor that the Movant will collect reasonable attorney fees and costs as allowed by the Note and Mortgage.

15. Nationstar Mortgage LLC services the Debt Agreement/Note/Home Equity Note on the property. In the event the automatic stay is modified, this case dismisses and/or the Debtor receives a discharge and a foreclosure action is commenced on the property, the foreclosure will be conducted in the name of Movant. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

**WHEREFORE,** Nationstar Mortgage LLC prays the Court as follows:

1. Modify the Automatic Stay and Co-Debtor Stay of Section 362(a) and 1301(a) of the Bankruptcy Code to permit Nationstar Mortgage LLC to enforce its security interest in the real property of the Debtors.

2. As an alternative to the relief prayed for above, grant adequate protection to Nationstar Mortgage LLC for its interest in the property of the Debtor and Co-Debtor.

3. Modify Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case and so Nationstar Mortgage LLC may immediately enforce and implement this order granting relief from the automatic stay.

4. Grant Nationstar Mortgage LLC reasonable costs and attorney fees incurred in connection with this proceeding; and,

5. Grant Nationstar Mortgage LLC such other and further relief as may seem just and proper.

6. The Movant further seeks relief to contact the Debtor by telephone or written correspondence and, and at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.

7. The Movant further requests that this Court require the Debtor to obtain court approval of any future agreements or modifications which increase or reduce the Debtor's disposable income and/or which affect the ability of the Debtor to perform under the Chapter 13 Plan.

This the 25th day of April, 2018.

*/s/ William P. Harris*
William P. Harris, Attorney for Creditor, Bar # ASB5744R99Y
wharris@logs.com |704-831-2343
Shapiro & Ingle, LLP
10130 Perimeter Pkwy, Suite 400
Charlotte, NC 28216
Phone: 704-333-8107 | Fax: 704-333-8156
Supervisory Attorney Contact: Helen Ball
hball@logs.com | 704-607-4881
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

In re:

ROBERTA LEE JONES AKA ROBERTA JONES AKA    CASE NO: 15-02294
ROBERTA L. JONES AKA ROBERTA LEE SANDERS    CHAPTER: 13
Debtor(s)

## CERTIFICATE OF SERVICE

       I hereby certify that I have this day served the foregoing and annexed pleading or paper upon:

| (Served via U.S. Mail) | (Served via Electronic Notification Only) |
|---|---|
| Roberta Lee Jones aka Roberta Jones aka Roberta L. Jones aka Roberta Lee Sanders | Herman D. Padgett |
| 9493 Bryants Landing Road | Padgett and Robertson, Attorneys |
| Stockton, AL 36579 | 4317 Downtowner Loop North |
| | Mobile, AL 36609 |

| (Served via U.S. Mail) | Monica Renea Quinn |
|---|---|
| Larry E. Jones | 4317 Downtowner Loop North |
| 9493 Bryants Landing Rd | Mobile, AL 36609 |
| Stockton, AL 36579 | |

(Served via Electronic Notification Only)
Daniel B. O'Brien
Chapter 13 Trustee
P.O. Box 1884
Mobile, AL 36633

by depositing the same in a postpaid wrapper properly addressed to each such party or his attorney of record in a post office or other official depository under the exclusive care and custody of the United States Postal Service and/or by electronic mail, if applicable.

       This the 25th day of April, 2018.

*/s/ William P. Harris*
William P. Harris, Attorney for Creditor, Bar # ASB5744R99Y
wharris@logs.com |704-831-2343
Shapiro & Ingle, LLP
10130 Perimeter Pkwy, Suite 400
Charlotte, NC 28216
Phone: 704-333-8107 | Fax: 704-333-8156
Supervisory Attorney Contact: Helen Ball
hball@logs.com | 704-607-4881
Electronic Service Notifications: ncbkmail@shapiro-ingle.com

16-010216

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE SOUTHERN DISTRICT OF ALABAMA

IN RE:

**ROBERTA LEE JONES AKA ROBERTA
JONES AKA ROBERTA L. JONES AKA
ROBERTA LEE SANDERS**

**Chapter: 13**

**DEBTOR.**

**CASE NO. 15-02294**

MOTION OF:

**NATIONSTAR MORTGAGE LLC**

STATE OF __Texas__

COUNTY OF __Denton__

### AFFIDAVIT

BEFORE ME, the undersigned, Notary Public, personally appeared Authorized Signer
_Chastity Wilson_____, who is known to me and after being by
me first duly sworn, deposes and says the following:

In the regular performance of my job functions for Nationstar Mortgage LLC Servicer for
U.S. Bank National Association, not in its individual capacity but solely as Trustee NRZ PASS-
THROUGH TRUST X ("Nationstar Mortgage LLC"), I am familiar with the business records
maintained by Nationstar Mortgage LLC for the purpose of servicing mortgage loans, collecting
payments and pursuing any delinquencies. Nationstar Mortgage LLC's servicing records
typically include electronic data compilations and imaged documents pertaining to the loans it
services. This mortgage loan shows the following:

| Property Description: | 9493 Bryants Landing Road, Stockton, AL 36579 |
|---|---|
| Collateral Value Per Schedule D: | $82,000.00 |
| Date of Default: | December 1, 2016 |

| | |
|---|---|
| Payments for December 1, 2016 - March 1, 2017 @ $1,113.58 each: | $4,454.32 |
| Payments for April 1, 2017 - July 1, 2017 @ $1,069.44 each: | $4,277.76 |
| Payments for August 1, 2017 - March 1, 2018 @ $1,017.03 each: | $8,136.24 |
| Suspense Credit: | $109.87 |
| Reinstatement Amount: | $16,758.45 |
| Estimated Payoff Amount Through March 27, 2018: | $101,601.20 |
| MFR Attorney Fee: | $0.00 |
| MFR Filing Fee: | $0.00 |
| Total Amount Due: | $101,601.20 |

_Chastity Wilson_
Signature

Chastity Wilson
Print Name
Assistant Secretary of
Nationstar Mortgage LLC
Affiant
Title

STATE OF ___Texas___
COUNTY OF ___Denton___
SUBSCRIBED AND SWORN TO
Before me this ___24___ day of ___April___, ___2018___.

_Zekiah Bray_
Notary Public
My commission expires: _____

ZEKIAH BRAY
Notary Public, State of Texas
Comm. Expires 03-14-2020
Notary ID 130580688

This instrument prepared by:
William P. Harris
Shapiro and Ingle, LLP
10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216
16-010216





## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

NOVEMBER 17, 2000 .................. ........ STOCKTON....................., ................ ALABAMA ............
.............................................. [City] ................................ [State]

9493 BRYANTS LANDING ROAD, STOCKTON, ALABAMA 36579
.................................................. [Property Address] ..................................................

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $73,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **SEBRING CAPITAL CORPORATION**. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **12.000%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **1ST** day of each month beginning on **JANUARY 1, 2001**.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **DECEMBER 1, 2030**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 700668, DALLAS, TEXAS 75370** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $757.06. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the **1ST** day of **DECEMBER, 2003**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN** percentage point(s) ( **7.000%** ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **13.500%** or less than **12.000%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE AND ONE-HALF** percentage point(s) (1.500%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **19.000%** or less than **12.000%**.

**MULTISTATE ADJUSTABLE RATE NOTE-LIBOR INDEX**-Single Family-**Freddie Mac Uniform Instrument**　Form 3590 7/92
Page 1 of 3

Copy

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3590 7/92

Copy

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

......................................................(Seal)
**LARRY E. JONES**                                     -Borrower

......................................................(Seal)
**ROBERTA L. JONES**                                   -Borrower

......................................................(Seal)
                                                       -Borrower

......................................................(Seal)
                                                       -Borrower

*[Sign Original Only]*

SECTION 5 ABOVE IS MODIFIED BY THE ADDENDUM ATTACHED HERETO.

PAY TO THE ORDER OF
~~RESIDENTIAL FUNDING CORPORATION~~

WITHOUT RECOURSE

THIS 28 DAY OF Nov . 2000
SEBRING CAPITAL CORPORATION

BY: _Vanessa Downs_ V.P.

VANESSA DOWNS

PAY TO THE ORDER OF
Bank One, National Association, as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY _Judy Faber_ Judy Faber, Vice President

Copy

Loan#

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note, in the amount of **$73,600.00**

NOTE DATE:        **11/17/2000**

BORROWER NAME:        **LARRY E JONES AND ROBERTA L JONES**

PROPERTY:        **9493 BRYANTS LANDING ROAD**
                       **STOCKTON, ALABAMA  36579**

PAY TO THE ORDER OF:

**THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JP MORGAN CHASE BANK, N.A., AS SUCCESSOR IN INTEREST TO BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2001-KS1**

WITHOUT RECOURSE

**BANK ONE, NATIONAL ASSOCIATION F/K/A THE FIRST NATIONAL BANK OF CHICAGO AS TRUSTEE BY IT'S ATTORNEY IN FACT OCWEN FEDERAL BANK FSB BY ITS SUCCESSOR IN INTEREST OCWEN LOAN SERVICING, LLC**

Signer: *Carlos Reyes*
Title: Authorized Signer

Copy

**Loan#** ██████████

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note, in the amount of $73,600.00

NOTE DATE:        November 17, 2000

BORROWER NAME:    LARRY E. JONES ANS ROBERTA L. JONES

PROPERTY:        9493 BRYANTS LANDING ROAD, STOCKTON, AL 36579

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE:**
The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JP Morgan Chase Bank, N.A., as successor in interest to Bank One, National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset Backed Pass-Through Certificates, Series 2001-KS1 BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC

*Lesley Feinsilver*

Name: Lesley Feinsilver

Title:Servicing Operations Specialist

Copy

PREPAYMENT PENALTY RIDER TO NOTE

Borrower Name(s): **LARRY E. JONES and ROBERTA L. JONES**

Loan Number: ▮

Property Address: **9493 BRYANTS LANDING ROAD**
**STOCKTON, ALABAMA, 36579**

Note Date: **NOVEMBER 17, 2000**

    For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this PREPAYMENT PENALTY RIDER TO NOTE ("Rider") amends that certain Promissory Note ("Note") of date shown above, to which this Rider is attached. Borrower and Lender agree that the Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument (Deed of Trust or Mortgage) given by Borrower to secure repayment of the Note.

## PREPAYMENT PENALTY TERM:

- ☐ **FIRST FIVE (5) YEARS OF LOAN;**
- ☐ **FIRST FOUR (4) YEARS OF LOAN**
- ☒ **FIRST THREE (3) YEARS OF LOAN**
- ☐ **FIRST TWO (2) YEARS OF LOAN**
- ☐ **FIRST ONE (1) YEARS OF LOAN**

## PREPAYMENT PENALTY:

    **DURING THE PREPAYMENT PENALTY TERM INDICATED ABOVE, BORROWER MAY PREPAY THIS LOAN IN AN AMOUNT NOT EXCEEDING TWENTY PERCENT (20%) OF THE ORIGINAL PRINCIPAL AMOUNT IN ANY TWELVE (12) MONTH PERIOD WITHOUT PENALTY. HOWEVER, DURING THE PREPAYMENT PENALTY TERM INDICATED ABOVE, A PREPAYMENT CHARGE WILL BE IMPOSED ON ANY AMOUNT PREPAID IN ANY TWELVE (12) MONTH PERIOD IN EXCESS OF TWENTY PERCENT (20%) OF THE ORIGINAL PRINCIPAL AMOUNT OF THIS LOAN. THE CHARGE IMPOSED SHALL BE AN AMOUNT EQUAL TO THE PAYMENT OF SIX (6) MONTHS' ADVANCE INTEREST ON THE AMOUNT PREPAID IN EXCESS OF TWENTY PERCENT (20%) OF THE ORIGINAL PRINCIPAL AMOUNT. AFTER THE PREPAYMENT PENALTY TERM INDICATED ABOVE, THERE SHALL BE NO PREPAYMENT PENALTY.**

    If a law, which applies to this loan and which sets a maximum prepayment charge or prohibits prepayment charges, is finally interpreted so that the prepayment charge to be collected in connection with this loan exceeds the permitted limits, then (i) any such prepayment charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, or (ii) if the prepayment charge is prohibited, no prepayment charge will be assessed or collected.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _Larry E. Jones_ (Seal) | _Roberta L. Jones_ (Seal) |
| Borrower **LARRY E. JONES** | Borrower **ROBERTA L. JONES** |
| _____ (Seal) | _____ (Seal) |
| Borrower | Borrower |
| _____ (Seal) | _____ (Seal) |
| Borrower | Borrower |

12/2/96

Exhibit 2
Copy

When Recorded Mail To:

Sebring Capital Corporation
4000 International Pkwy, #3000
Carrollton, Texas 75007

State of Alabama, Baldwin County
I certify this instrument was filed
and taxes collected on:

2000 December - 4   81:43M
Instrument Number 27.00
Recording 110.40
Deed
Index        3.00
Archive
Adrian T. Johns, Judge of Probate

Pages   9
Mortgage 110.40
Min Tax
DP      1.00

00-405

Guarantee Title Comp...
1290 Main St., Suite A
Daphne, Alabama 36526

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

Loan Number ▓▓▓▓

THIS MORTGAGE ("Security Instrument") is given on **NOVEMBER 17, 2000**. The grantor is **LARRY E. JONES AND SPOUSE, ROBERTA L. JONES** ("Borrower"). This Security Instrument is given to **SEBRING CAPITAL CORPORATION**, which is organized and existing under the laws of **THE STATE OF DELAWARE**, and whose address is **4000 INTERNATIONAL PKWY, #3000, CARROLLTON, TEXAS 75007** ("Lender"). Borrower owes Lender the principal sum of **SEVENTY-THREE THOUSAND SIX HUNDRED AND 00/100ths** Dollars (U.S.**$73,600.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **DECEMBER 1, 2030**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in **BALDWIN** County, Alabama:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES**

which has the address of ___**9493 BRYANTS LANDING ROAD**_____ , __**STOCKTON**_____ ,
[Street]                                                              [City]
Alabama ____**36579**_____ ("Property Address");
[Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**ALABAMA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3001  9/90  *(page 1 of 6 pages)*
GMD 0146 (1193)

Copy

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

GMD 0146 (1193)

Copy

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

Copy

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

Copy

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in BALDWIN County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

Copy

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☒ Adjustable Rate Rider       ☐ Condominium Rider       ☐ 1-4 Family Rider

☐ Graduated Payment Rider       ☐ Planned Unit Development Rider       ☐ Biweekly Payment Rider

☐ Balloon Rider       ☐ Rate Improvement Rider       ☐ Second Home Rider

☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____       _____ (Seal)
                                             LARRY E. JONES              -Borrower

_____       _____ (Seal)
                                             ROBERTA L. JONES            -Borrower

_____ (Seal)       _____ (Seal)
                     -Borrower                                                  -Borrower

————————————— [Space Below This Line For Acknowledgment] —————————————

STATE OF ALABAMA,       Baldwin       County ss:

On this 17th day of November, 2000, I, the undersigned authority, a Notary Public in and for said county and in said state, hereby certify that **LARRY E. JONES AND SPOUSE and ROBERTA L. JONES**, whose name(s) are signed to the foregoing conveyance, and who are known to me, acknowledged before me that, being informed of the contents of the conveyance, they executed the same voluntarily and as their act on the day the same bears date.

Given under my hand and seal of office this 17th day of November, 2000

My Commission expires:       NOTARY PUBLIC STATE OF ALABAMA AT LARGE
                                   MY COMMISSION EXPIRES: June 14, 2003
                                   BONDED THRU NOTARY PUBLIC UNDERWRITERS

Notary Public

This instrument was prepared by       Don W. Ledbetter, PLLC
                                       17130 Dallas Parkway, Suite 115, Dallas, Texas 75248

Copy

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

Loan No

THIS ADJUSTABLE RATE RIDER is made this **17TH** day of **NOVEMBER, 2000**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **SEBRING CAPITAL CORPORATION** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**9493 BRYANTS LANDING ROAD, STOCKTON, ALABAMA 36579**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **12.000%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A)   Change Dates**
   The interest rate I will pay may change on the **1ST** day of **DECEMBER, 2003,** and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
   **(B)   The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   **(C)   Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN**   percentage points (**7.000%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
   **(D)   Limits on Interest Rate Changes**
   The interest rate I am required to pay at the first Change Date will not be greater than **13.500%** or less than **12.000%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE AND ONE-HALF** percentage point(s) (**1.500%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **19.000%** or less than **12.000%** .
   **(E)   Effective Date of Changes**
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family-Freddie Mac Uniform Instrument          Form 3192 7/92**
**Page 1 of 2**

Copy

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

..........................................................................(Seal)
**LARRY E. JONES**                                        -Borrower

..........................................................................(Seal)
**ROBERTA L. JONES**                                   -Borrower

..........................................................................(Seal)
                                                                  -Borrower

..........................................................................(Seal)
                                                                  -Borrower

Form 3192  7/92

Instrument        Page  8of  9

Copy

# EXHIBIT A
## LEGAL DESCRIPTION

Commence at the Southwest corner of Lot 3 in the Sam Bryant Tract Subdivision, Section 43, Township 1 North, Range 2 East; run thence South 88 degrees 45' 57" East along the South line of said Lot 3 for 200.0 feet to the Point of Beginning; run thence North 01 degrees 14' 03" East for 150.0 feet; thence run South 88 degrees 45' 57" East for 145.2 feet; thence run South 01 degrees 14' 03" West for 150.0 feet to the South line of said Lot 3; run thence North 88 degrees 45' 57" West along the South line of said Lot 3 for 145.2 feet to the Point of Beginning.  Said land lies in Section 43, Township 1 North, Range 2 East, Baldwin County, Alabama.

Instrument ▮▮▮ Page 9of 9

Exhibit 3

### Motion For Relief Information
#### Post-Petition Ledger

| Filed By: | oberta Lee Jone | Payment Changes | | | |
|---|---|---|---|---|---|
| | 0 | | | | |
| Case Number: | 15-02294 | From Date | To Date | Total Amount | P&I Total |
| Filing Date: | 07/20/15 | | | | |
| yments in PO | $0.00 | | | | |
| st Post Due Da | 08/01/15 | | | | |

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance | Comments | Applied (P&I and | Escrow Applied | Fees/Costs/Corp Applied | Payment Suspense | Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| 12/18/15 | $ 1,138.53 | 08/01/15 | $ 1,017.18 | $ 121.35 | | $ 884.96 | | | $ 253.57 | $ 253.57 |
| 01/14/16 | $ 1,138.53 | 09/01/15 | $ 1,017.18 | $ 242.70 | | $ 884.96 | | | $ 253.57 | $ 507.14 |
| 06/20/16 | $ 1,138.53 | 10/01/15 | $ 1,017.18 | $ 364.05 | | $ 884.96 | | | $ 253.57 | $ 760.71 |
| 09/02/16 | $ 1,138.53 | 11/01/15 | $ 1,017.18 | $ 485.40 | | $ 884.96 | | | $ 253.57 | $ 1,014.28 |
| 09/02/16 | $ 124.85 | | | $ 610.25 | | | | | $ 124.85 | $ 1,139.13 |
| 09/02/16 | $ 1,138.53 | 12/01/15 | $ 1,017.18 | $ 731.60 | | $ 884.96 | | | $ 253.57 | $ 1,392.70 |
| 09/02/16 | $ 885.11 | 01/01/16 | $ 1,017.03 | $ 599.68 | | $ 884.96 | | | $ 0.15 | $ 1,392.85 |
| 09/02/16 | | | | $ 599.68 | | $ 884.96 | | | $ (884.96) | $ 507.89 |
| 09/02/16 | $ 253.42 | | | $ 853.10 | | | | | $ 253.42 | $ 761.31 |
| 09/14/16 | | | | $ 853.10 | | $ 876.05 | | | $ (884.96) | $ (114.74) |
| 09/14/16 | | | | $ 853.10 | | $ 884.96 | | | $ (884.96) | $ (999.70) |
| 09/14/16 | $ 971.58 | | | $ 1,824.68 | | | | $ (28.15) | $ 999.73 | $ 0.03 |
| 01/23/17 | $ 1,138.53 | 02/01/16 | $ 1,017.03 | $ 1,946.18 | | $ 884.96 | | | $ 253.57 | $ 253.60 |
| 04/14/17 | $ 1,138.53 | 03/01/16 | $ 1,017.03 | $ 2,067.68 | | $ 884.96 | | | $ 253.57 | $ 507.17 |
| 06/15/17 | $ 951.00 | 04/01/16 | $ 1,017.03 | $ 2,001.65 | | $ 884.96 | | | $ 66.04 | $ 573.21 |
| 09/26/17 | $ 971.58 | 05/01/16 | $ 1,017.03 | $ 1,956.20 | | $ 884.97 | | | $ 86.61 | $ 659.82 |
| 12/26/17 | $ 971.00 | 06/01/16 | $ 1,017.03 | $ 1,910.17 | | $ 1,113.59 | | | $ (142.59) | $ 517.23 |
| 01/19/18 | $ 971.00 | 07/01/16 | $ 1,017.03 | $ 1,864.14 | | $ 1,113.59 | | | $ (142.59) | $ 374.64 |
| 02/07/18 | $ 277.50 | 08/01/16 | $ 1,017.03 | $ 1,124.61 | | | | | $ 277.50 | $ 652.14 |
| 02/12/18 | $ 1,138.38 | 09/01/16 | $ 1,113.58 | $ 1,149.41 | As Per PCN | | | | $ 1,138.38 | $ 1,790.52 |
| 02/13/18 | | 10/01/16 | $ 1,113.58 | $ 35.83 | | $ 887.06 | | | $ (887.06) | $ 903.46 |
| 03/08/18 | $ 1,187.62 | 11/01/16 | $ 1,113.58 | $ 109.87 | | | | | $ 1,187.62 | $ 2,091.08 |
| 03/09/18 | | | | $ 109.87 | | $ 887.06 | | | $ (887.06) | $ 1,204.02 |
| 03/13/18 | | | | $ 109.87 | | $ 887.06 | | | $ (887.06) | $ 316.96 |
| | | | | $ 109.87 | | | | | $ - | $ 316.96 |
| | | | | $ 109.87 | | | | | $ - | $ 316.96 |
| | | | | $ 109.87 | | | | | $ - | $ 316.96 |
| | | | | $ 109.87 | | | | | $ - | $ 316.96 |
| | | | | $ 109.87 | | | | | $ - | $ 316.96 |
| | | | | $ 109.87 | | | | | $ - | $ 316.96 |